DEERING MILLIKEN RESEARCH COR-
PORATION, Plaintiff-Appellant,
Warren A. Seem, Nicholas J. Stoddard,
Frederick Tecce and Harold P. Berger,
copartners trading as The Permatwist
Company, Intervenor,

v.

LEESONA CORPORATION, Defendant-
Appellee.

No. 76, Docket 27628.

United States Court of Appeals
Second Circuit.

Argued Oct. 30, 1962.

Decided March 29, 1963.

Granville M. Brumbaugh, New York
City (Brumbaugh, Free, Graves & Don-

ohue, New York City, on the brief;
Stuart N. Updike, James N. Buckner,
and Lee W. Meyer, New York City, of
counsel), for plaintiff-appellant.

Robert F. Conrad, Washington, D. C.
(Watson, Cole, Grindle & Watson, Wash-
ington, D. C., on the brief), (Debevoise,
Plimpton, Lyons & Gates, New York
City, of counsel), for defendant-appellee.

William J. Fuchs, Obermayer, Reb-
man, Maxwell & Hippel, Philadelphia,
Pa., for intervenor Permatwist Co.

Before CLARK, FRIENDLY and
MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This is an appeal by Deering Milli-
ken Research Corporation, plaintiff be-
low, from an order of the United States
District Court for the Eastern District
of New York, Byers, J., which dismissed
plaintiff's amended complaint and en-
tered judgment on the merits for the
defendant, Leesona Corporation. The
court retained jurisdiction without ruling
upon the merits of a complaint filed by
the intervenor, The Permatwist Com-
pany. The opinion is reported at 201
F.Supp. 776 (E.D.N.Y.1962).

Deering Milliken Research Corpora-
tion, which in 1955 succeeded to the busi-
ness and assets of Deering Milliken Re-
search Trust, is a Delaware corporation
having its principal office and place of
business in Spartanburg, South Carolina.
It is engaged in research and develop-
ment, rather than manufacturing, in the
field of textiles, particularly the area of
thermo-plastic synthetic yarns used in
the production of hosiery and of fabrics
for wearing apparel. Its income is ob-
tained from royalties paid by its licen-
sees for the use of its patents and inven-
tions. Leesona Corporation, which in
1959 changed its name from Universal
Winding Company, is a Massachusetts
corporation which has its principal place
of business in Cranston, Rhode Island,
and maintains a research laboratory in
Jamaica, Queens County, within the
Eastern District of New York. Leesona
is engaged in the manufacture and sale of

textile machinery and equipment used by mills in the fabrication of hosiery and wearing apparel in which thermo-plastic yarns are used; appellant's brief describes Leesona as "dominant in that segment of the industry which is concerned with the subject matter of this appeal—machinery to produce crimped nylon yarn." Permatwist, a partnership consisting of four men, each of whom is a citizen of Pennsylvania, is a competitor of the plaintiff in the design and licensing of mechanical equipment for use in textile manufacturing. For convenience, each of the parties will be referred to by its present name.

On November 23, 1954, Deering Milliken and Leesona entered into a licensing agreement. By the terms of the agreement, Deering Milliken granted to Leesona a royalty-free license to manufacture and sell to Deering Milliken's use licensees apparatus designed by Deering Milliken for use in the manufacture of elasticized yarn and embodying its technical information and inventions. Deering Milliken also agreed not to license other machinery manufacturers in the United States during the term of the agreement. In a grant-back clause that was to become central to the litigation that resulted, the parties provided:

"3. Any improvements made on the apparatus or process which is the subject matter of this agreement by or through the efforts of UNIVERSAL or UNIVERSAL'S employees or which are acquired by UNIVERSAL or which come under its control during the term of this agreement together with any and all applications for patent and patents granted thereon shall become the property of RESEARCH TRUST, and UNIVERSAL hereby agrees to assign or to cause the same to be assigned to RESEARCH TRUST to the full extent of the interest therein by UNIVERSAL and the same shall be available to UNIVERSAL exclusively for manufacture and sale to RESEARCH TRUST'S licensees also without payment of royalty. In the event this agreement is terminated as hereinafter provided, UNIVERSAL shall have the exclusive right to manufacture for sale any improvements assigned to RESEARCH TRUST as herein provided, excepting the manufacture for sale of such improvements for use in the practice of the elasticizing yarn process and/or apparatus defined herein."

The "subject matter of this agreement" had been stated in the preamble to be "certain inventions and technical information relating to elasticized yarn and the apparatus and the process employed in the manufacture of such yarn, which process and apparatus comprise passing yarn under predetermined tension about a sharp edge and equipment therefor * * *." The commercial product of plaintiff's apparatus and process is known by the name Agilon.

Following the execution of this agreement, Leesona made and developed a device for use in textile manufacturing which it designated as its No. 511 Apparatus and Process. Believing that the 511 machine and process constituted an improvement on its own apparatus that was the subject matter of the license agreement, Deering Milliken made demand upon Leesona for assignment to it of Leesona's right, title, and interest in and to the 511 invention, in asserted pursuance to the grant-back clause. Leesona took the position that its 511 apparatus was not an "improvement" upon Deering Milliken's apparatus or process and that it therefore had no obligation under the grant-back clause of the agreement to assign its rights in the invention to Deering Milliken.

The present litigation resulted. Asserting jurisdiction under 28 U.S.C.A. § 1332, Deering Milliken sought specific performance of the contract and related relief. The cause was heard before Judge Byers from June 12, 1961 to July 13, 1961, with the testimony and evidence being directed primarily to the question of whether defendant's 511 apparatus and process constituted an improvement upon plaintiff's apparatus and process

within the meaning of the grant-back clause of the parties' agreement.

Judge Byers resolved that question of fact in favor of the defendant, holding that "the testimony demonstrates that the yarn which emerges from the 511 apparatus and process is a thing which did not exist as the product of * * * the plaintiff's Agilon apparatus and process," 201 F.Supp. at 780, and that the "511 apparatus is not an improvement upon the Agilon apparatus within the contemplation of the grant-back clause contained in the license agreement between the plaintiff and defendant * *." Id. at 786–787. He accordingly dismissed plaintiff's amended complaint, rendered judgment for the defendant on the merits, and retained jurisdiction of the intervenor's cause in the event that his findings should be reversed on appeal. This court subsequently denied plaintiff's motion for an injunction pending determination of this appeal.

The decision we are asked to review turned essentially on matters of fact, and rather technical ones at that. The record created in the trial court is a long one, running to more than 3,000 pages. We have examined it carefully and have concluded that the result reached by the District Court in resolving those matters of fact is amply supported by the evidence. Accordingly, the judgment below must be affirmed.

The evidence in the District Court established that raw nylon is an inert substance; a given filament resembles a fine string or cord, gray in color and limp rather than rigid in texture. By means of certain treatments, generally termed elasticizing, latent possibilities in the material can be aroused so that nylon yarn takes on a crinkly appearance similar to that of natural fibers and is thereby rendered more desirable for use in the manufacture of certain types of wearing apparel. Plaintiff's method for imparting a crimp involved drawing the smooth nylon yarn over a sharp-edged, angled knife blade at a critical temperature and with suitable tension compensation. The pressure exerted on the yarn as it passes over the blade during this stage of the treatment disorients the molecules of the nylon filament in the compressed area, leaving that area less stable than it was before the treatment and creating a latent crimp. The further application of heat to the yarn imparts a permanent crimp. The density or tightness of the permanent crimp depends upon the tension or restraint imposed upon the yarn during the second application of heat.

In order to give the yarn a permanent crimp, it was necessary to subject it to a second thermal treatment after it had passed over the blade provided by plaintiff's process. Plaintiff's process was limited to a mechanism which accomplished only the first stage of disorienting the molecules of the filament; once it had effected that, plaintiff's process was completed. By contrast, as we shall shortly point out, the defendant's 511 apparatus and process was capable of imparting a permanent crimp because it made provision for a second application of heat as an integral part of its operation.

When plaintiff's process was used, the second application of heat, which was essential to development of the desired crimp, was obtained by calling for specific hot water temperatures during the "finishing" of the knitted fabric, a conventional manufacturing process in which the fabric, after having been knitted, is washed in agitated hot water, dried, and then usually dyed and blocked. Plaintiff thus relied upon the heat of the finishing process to impart the permanent crimp. This method had several advantages, including the elimination of a separate stage of operation by combining into one step the separate steps of crimp development and finishing. It also had disadvantages, including the impossibility of exercising the necessary control of tension during the finishing process. A result of this lack of tension control was that yarn submitted to this process generally developed high "stretch" and low "bulk" characteristics, rendering it desirable for use in such

products as women's seamless hosiery, which required yarn having "stretch" qualities, but less desirable for use in such products as sweaters, which required yarn having "bulk" qualities.

The 511 apparatus and process developed by the defendant was significantly different from Agilon's process. In contrast to the failure or inability of plaintiff's process to make provision for the second application of heat, the defendant's process fully provided for the thermal processing of latently crimped yarn in order to impart a permanent crimp. This second application of heat accomplished by defendant's process was a separate and subsequent step not performed by plaintiff's process. The defendant's process treated the yarn subsequent to its treatment by plaintiff's process and only after plaintiff's process had done all it was capable of doing. Hence, the second application of heat as an integral part of defendant's 511 process was in lieu of the second application of heat which Agilon yarn received, not as part of plaintiff's process but as part of the conventional finishing process. The result of the defendant's process was a bulk yarn suitable for use in the manufacture of such apparel as sweaters. In describing the effects of defendant's 511 process, one of Deering Milliken's officers said:

"A. * * * It relaxes the stresses in the yarn, and you end up with a yarn which, instead of being a stretch yarn, is a bulked yarn—a more voluminous yarn.

"Q. Does it have any stretch properties? A. It will have some stretch properties, but relatively little compared with what you started with. The idea is to emphasize the bulk and to de-emphasize the stretch."

Detailed testimony was offered in the District Court to describe the differences in method and in result between plaintiff's Agilon apparatus and process and defendant's 511 apparatus and process. No purpose would be served by outlining all of that testimony here. It is sufficient to say that in our judgment it fully supported the District Court's conclusion that the 511 apparatus and process was not an improvement on the Agilon apparatus and process because "the 511 apparatus and process do not accomplish the same thing that the Agilon process and apparatus bring into existence * * *." As the District Court said, 201 F.Supp. at 784:

"The 511 apparatus and process does not accomplish the finishing of Agilon yarn. It brings into existence a bulk yarn which the Agilon mechanism could not accomplish. To call the functioning of the 511 apparatus and process a finishing of the Agilon yarn seems to this Court to be a misnomer, since the Agilon yarn could be finished and refinished indefinitely without bringing into existence a bulk yarn."

Even if we were to assume with the plaintiff that too great a distinction should not be drawn between "stretch" and "bulk" yarns, or that too great an emphasis should not be placed upon that distinction, we would still have to hold that the District Court had adequate basis for rejecting plaintiff's contention that the reference in the grant-back clause to "improvement on the apparatus or process which is the subject matter of this agreement" was intended to cover improvements which the defendant's different process might impart to the yarn itself. As the court below pointed out, the defendant presented convincing evidence that when the plaintiff, in prior and contemporaneous dealings with other parties, intended to embody in a license agreement the subject of an improvement in the yarn as distinguished from the subject of an improvement in the mechanism employed to treat the yarn, it knew how to do so in clear, deliberate, and appropriate language. See 201 F.Supp. at 783. The District Court properly gave weight to the absence of such language in the present agreement.

Moreover, there was adequate evidence in a record replete in technical descrip-

tion and detail to justify the conclusion that the precise and intended reference to the Agilon apparatus and process in the license agreement did not include the second application of heat because this second application is not an integral part of plaintiff's apparatus and process. One of plaintiff's officers stated that "ours is a continuous one step process." This statement must be read in conjunction with the evidence that the second application of heat necessary to develop the crimp was a separate and subsequent step not performed by plaintiff's apparatus and with the evidence that defendant's 511 apparatus and process treats the yarn subsequent to its treatment by plaintiff's process and in lieu of the second application of heat which Agilon yarn receives as part of the conventional finishing process. Thus, both the treatments provided to plaintiff's yarn by the finishing process and the treatments provided to defendant's yarn by the 511 apparatus and process occur after plaintiff's machine has completed its functions. It seems clear that the improvements clause in the license agreement—relating as it does to "the apparatus and process employed in the manufacture of [elasticized] yarn"—would not entitle plaintiff to possible improvements in the finishing process. Since defendant's 511 device has no greater relationship to plaintiff's process than to provide a second heating of the yarn, in a fashion similar to that provided by the finishing operation, it was reasonable for the District Court to conclude that plaintiff was not entitled under the terms of the license agreement to claim defendant's machine as an improvement on its own.

Finally, the decision of the District Court gives implicit recognition to the common-sense conclusion that strong and plain contractual language, indeed, would be required to support a finding that Leesona, engaged in the business of manufacturing textile machinery, would agree to assign to Deering Milliken all improved methods for processing yarn that came out of Deering Milliken's machine. The business arrangement which the District Court in effect found to exist—that the grant-back clause related only to improvements to the machine which plaintiff had developed—is the far more reasonable one. Nothing in the language or in the conduct of the parties is sufficiently probative of a less reasonable business arrangement.

Affirmed.